IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giorgio Salvatore Panza         :
                                              :
           v.                      : No. 375 C.D. 2025
                                              : Submitted: June 16, 2026
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                          Appellant    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE STELLA M. TSAI, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                    FILED:  August 4, 2026


The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals the order dated February 13, 2025 (order) of the Court of Common Pleas of Allegheny County (trial court) sustaining the statutory appeal of Giorgio Salvatore Panza (Licensee) from DOT's one-year suspension of his operating privilege. DOT imposed the suspension under Section 1547(b) of the Vehicle Code, commonly known as the Implied Consent Law,[1] because Licensee

---

[1] 75 Pa.C.S. § 1547(b). It provides in relevant part:

> (1) If any person placed under arrest for a violation of section 3802 [relating to driving under the influence] is requested to submit to chemical testing and

**(Footnote continued on next page…)**

refused to submit to a chemical blood test after his arrest for driving under the influence (DUI) of alcohol in violation of Section 3802 of the Vehicle Code,[2] 75 Pa.C.S. § 3802. After review, we reverse.

## I. Background

On August 9, 2024, Officer Aaron Maggi (Officer Maggi) of the Castle Shannon Borough Police Department arrested Licensee for DUI. Reproduced Record (R.R.) at 15a, 17a. Licensee refused to submit to a chemical blood test at the time of the arrest. *Id.* at 5a. By notice mailed August 22, 2024, DOT informed Licensee his driving privilege would be suspended for one year, effective September 26, 2024, because he refused to submit to the test. *Id.* Licensee timely appealed to the trial court.

The trial court conducted a hearing *de novo* on February 13, 2025.[3] *Id.* at 13a. At the outset, counsel for Licensee stipulated "that [Licensee] was operating the vehicle," and "was the individual involved in the incident [Officer Maggi] is going to testify to." *Id.* at 14a-15a. Officer Maggi then testified he responded to a one-vehicle accident involving Licensee. *Id.* at 16a. When Officer Maggi made contact with Licensee, he observed Licensee "had glassy bloodshot watery eyes and an odor of alcoholic beverage emanating from his breath." *Id.* Based upon those observations, Officer Maggi performed the standardized field sobriety tests with

---

       refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:
         (i) . . . for a period of 12 months.

75 Pa.C.S. § 1547(b)(1)(i).

[2] 75 Pa.C.S. §§ 101 - 9805.

[3] A hearing *de novo* "permits a trial court to consider the case anew." *In re Vencil*, 152 A.3d 235, 237 n.1 (Pa. 2017) (citation omitted).

Licensee, specifically, the "horizontal gaze nystagmus, the walk and turn, and the one-legged stand." *Id.* Additionally, Officer Maggi offered Licensee a preliminary breath test, and the "results showed indication of alcohol." *Id.* at 17a. Based on his observations and testing, Officer Maggi "determined that [Licensee] was under the influence of alcohol," and he "placed [Licensee] under arrest." *Id.* Officer Maggi then placed Licensee in the rear of his patrol vehicle and read Licensee the implied consent warnings verbatim from the DL-26 form.[4] *Id.* at 17a, 21a-22a. Licensee "declined the chemical test form." *Id.* at 18a. Officer Maggi premised this refusal upon the fact that "[Licensee] said no, he did not want to go to the hospital for chemical testing." *Id.* Officer Maggi and Licensee signed the DL-26 form. *Id.*

On cross-examination, Officer Maggi confirmed this one-car accident resulted in "relatively significant damage." *Id.* at 20a. Officer Maggi agreed with Licensee's counsel, that upon **first encountering Licensee outside his vehicle**, Licensee

---

[4] The implied consent warnings, as outlined in DOT's DL-26 form, are as follows:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

R.R. at 54a.

"look[ed] like he may be under the influence, but he also could have been injured in this crash." *Id.* at 20a-21a. **At that time**, Officer Maggi asked Licensee if he needed treatment at the hospital; however, Licensee refused medical aid. *Id.* Licensee's counsel specifically asked whether Officer Maggi read the DL-26 form to Licensee **at this same time**, and Officer Maggi responded, "[n]o." *Id.* at 21a. Officer Maggi reiterated that he performed the field sobriety tests first, then placed Licensee under arrest, and placed Licensee in the rear of his patrol vehicle **before** retrieving the DL-26 form. *Id.* at 21a-22a. Licensee's counsel then questioned Officer Maggi regarding his reading of the DL-26 form to Licensee:

> Q. You read it to him and you're saying that he verbally said, "I don't want to go to the hospital . . . ?["]
>
> A. Yes.
>
> Q. Did he verbally say, "I don't want to take the test" or did he say, "I don't want to go to the hospital . . . ?["] If you don't recall, it's okay.
>
> A. No, that's fine. Due to what I believe is intoxication, the only thing he uttered was "no" repeatedly.
>
> Q. So he never specifically said "I don't want to take the test . . . ?["] He just said no?
>
> A. Yes.

*Id.* at 22a-23a.

Licensee testified, and admitted to driving the car, consuming alcohol, and being involved in the accident, which resulted in his car being totaled. *Id.* at 26a-27a, 29a. Licensee stated when **first confronted**, "I was **outside** my vehicle looking at the damage from the accident. [Officer Maggi] approached me and asked me if I needed any aid, if I needed to go to the hospital. At that time I told him no." *Id.* at

4

27a (emphasis added). Next, Licensee indicated Officer Maggi "ran the field sobriety test because he believed I was under the influence of alcohol." *Id.* Thereafter, Licensee testified he "blew into a device, . . . was put in handcuffs and placed in the back of a cop car . . . [and w]e then proceeded to go to the police station." *Id.* at 27a-28a. Licensee denied that Officer Maggi read him the DL-26 form, either at the accident scene or the police station. *Id.* at 28a-29a. Rather, Licensee testified "I was just asked to sign a paper and if I did that, I could be released that night [from the police station jail cell]." *Id.* at 29a. Licensee admitted he did not have any evidence of being unable to make a knowing and conscious decision on the night of his arrest. *Id.* at 29a-30a.

At the conclusion of the hearing, the trial court issued its order sustaining Licensee's appeal. *Id.* at 39a. In doing so, the trial court "found [Officer Maggi] to be fully credible." *Id.* at 36a. However, the trial court explained "[i]t was a little unclear as to whether the refusal was contemporaneous with the refusal for medical treatment and for the test of his breath or blood." *Id.* at 36a-37a. Thereafter, DOT filed a motion for reconsideration, which the trial court denied. *Id.* at 40a, 56a.

DOT appealed. On appeal, DOT asserts the trial court erred as a matter of law by sustaining Licensee's statutory appeal because "the trial court's finding that '[t]he testimony was unclear whether the chemical test refusal was contemporaneous with the refusal for medical treatment' [was] unsupported by competent evidence." DOT's Br. at 4.

## II.    Discussion

Our review in license suspension appeals is limited to determining whether the trial court's findings are supported by substantial evidence, whether errors of law have been committed, or whether the trial court committed an abuse of discretion.

5

*Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pequea Twp. v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 504 n.1 (Pa. Cmwlth. 2018) (quoting *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)). "An abuse of discretion occurs where in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Tullytown Borough v. Armstrong*, 129 A.3d 619, 622 (Pa. Cmwlth. 2015) (quotation marks omitted). The trial court is the fact-finder in license suspension appeals and determines credibility and weight of the evidence presented. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) (citation omitted).

To defend a license suspension at an appeal hearing, DOT must establish: (1) a police officer arrested the licensee for DUI and the officer had reasonable grounds to believe the licensee was operating or in actual physical control of the movement of a vehicle under the influence of alcohol or a controlled substance; (2) the officer asked the licensee to submit to a chemical test; (3) the licensee refused to submit to the chemical test; and (4) the officer warned the licensee that refusing the chemical test would result in a license suspension. *See Jackson v. Dep't of Transp., Bureau of Driver Licensing*, 191 A.3d 931, 935 (Pa. Cmwlth. 2018) (citation omitted). Once DOT meets this burden, the burden shifts to the licensee to prove (1) his refusal was not knowing and conscious; or (2) he was physically incapable of performing the chemical test. *Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013). The sole issue in this case is whether the trial

court erred as a matter of law in finding Licensee's refusal of medical treatment occurred contemporaneously with his refusal of chemical testing.

"The question of whether a licensee refuses to submit to a chemical test is a legal one subject to plenary review on appeal." *Boseman v. Dep't of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 14 (Pa. Cmwlth. 2017). "In other words, we do not defer to the [trial court's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024). It is well settled that "the DL-26 [f]orm is sufficient as a matter of law to meet the warning requirement under Vehicle Code Section 1547(b)." *Yourick v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 345 (Pa. Cmwlth. 2009); *Quigley v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 349, 353 (Pa. Cmwlth. 2009) ("We hold [the DL-26 form] warning sufficiently apprises the driver hearing and/or reading it that, if he/she refuses to submit to the chemical test, his/her operating privileges 'will be suspended,' and that other penalties may be imposed."). Additionally, this Court has held that "[a]nything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal." *Boseman*, 157 A.3d at 14.

Here, in sustaining Licensee's appeal, the trial court explained, "[Licensee] said that no, he did not want medical treatment. The testimony was unclear whether the chemical test refusal was contemporaneous with the refusal for medical treatment." R.R. at 75a. However, substantial evidence does not support this finding. In several regards, DOT and Licensee agree to an identical timeline of events. Notably, both parties' renditions include a distinct demarcation between Licensee's refusal of medical treatment upon Officer Maggi's **initial** arrival on scene when Licensee was standing **outside** of his vehicle, and the subsequent field sobriety

7

testing, preliminary breath test, and arrest and confinement of Licensee within Officer Maggi's patrol vehicle. When questioned on direct examination, Licensee acknowledged his refusal of medical aid as a separate event that occurred upon **first encountering** Officer Maggi. *Id.* at 27a. Officer Maggi specifically denied reading the DL-26 form to Licensee at this time of first encounter. *Id.* at 21a. Only **after** conducting field sobriety testing, and subsequently arresting Licensee and placing him in the rear of the patrol vehicle, did Officer Maggi read the DL-26 form to him. *Id.* at 21a-22a. Thus, we agree with DOT that the trial court erred as a matter of law in sustaining Licensee's statutory appeal based on Licensee's "contemporaneous" refusal for medical aid and chemical testing.

The parties disagree regarding whether Officer Maggi read the DL-26 form to Licensee. Again, Officer Maggi testified he read the DL-26 form to Licensee verbatim following Licensee's arrest, which prompted Licensee's refusal. *Id.* at 17a, 21a-22a. Licensee denied that Officer Maggi read him the DL-26 form, either at the accident scene or the police station. *Id.* at 28a-29a. However, the trial court found Officer Maggi's testimony fully credible. *Id.* at 36a, 75a. By reading the implied consent warnings in the DL-26 form, Officer Maggi requested that Licensee submit to a chemical blood test and warned him that his operating privilege would be suspended for at least one year if he refused the test. *Id.* at 54a; *see Yourick*, 965 A.2d at 345. We will not disturb the trial court's credibility determination. *See Factor*, 199 A.3d at 497. Therefore, we discern DOT met its burden of proof with respect to the warning requirement in Section 1547(b)(1)(i) of the Vehicle Code.

Because DOT met its burden of proof, the burden then shifted to Licensee to prove he was either (1) incapable of making a knowing and conscious refusal, or (2) physically incapable of performing the chemical test. *See Giannopoulos*, 82 A.3d at

8

1094. Licensee presented no evidence to satisfy this burden. Thus, we conclude the trial court had no basis to sustain his appeal.

### III. Conclusion

For these reasons, the trial court erred by sustaining Licensee's appeal from the one-year suspension of his operating privilege. Accordingly, we reverse the trial court's order.

 

_____

STACY WALLACE, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Giorgio Salvatore Panza | : | |
| | : | |
| v. | : | No. 375 C.D. 2025 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

## **O R D E R**

**AND NOW**, this 4th day of August 2026, the February 13, 2025 order of the Court of Common Pleas of Allegheny County is **REVERSED**, and the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, is hereby **DIRECTED** to reinstate the one-year suspension of Giorgio Salvatore Panza's operating privilege.

_____
STACY WALLACE, Judge